Filed 9/29/15  Hughes v. The Bank of New York Mellon CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| GLEN HUGHES, as Trustee, etc., | |
| Plaintiff and Appellant, | G050271 |
| v. | (Super. Ct. No. 30-2014-00699297-CU-OR-CJC) |
| THE BANK OF NEW YORK MELLON, as Trustee, etc., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed.

Law Offices of Daniel G. Brown and Daniel G. Brown for Plaintiff and Appellant.

The Mortgage Law Firm and James F. Lewin for Defendant and Respondent The Mortgage Law Firm.

Ackerman, Justin D. Balser, Karen Palladino Ciccone, Christopher R. Fredrich and Evan F. Anderson for Defendants and Respondents The Bank of New York Mellon, as Trustee, and Specialized Loan Servicing.

Glen Hughes, acting in his capacity as trustee of the 2013-03 Aquila Reynolds Trust, is the record owner of a residential property in Coto de Caza (the property.)  He purchased the property through foreclosure of a homeowners' association lien in 2013, and his ownership was subject to any senior liens on the property.  Hughes acknowledges that at the time of his purchase, the property's chain of title reflected a lien created by the recordation of a deed of trust in 2006.  A notice of delinquency and intent to sell in connection with the 2006 deed of trust was recorded in 2012.

Hughes filed this lawsuit against (1) The Bank of New York Mellon (the Bank), which claims to be the successor in interest to the lender on the 2006 deed of trust, (2) Specialized Loan Servicing, Inc. LLP (SLS), the Bank's loan servicer, and (3) The Mortgage Law Firm, PLC, which claims to be the successor trustee on the 2006 deed of trust.  In his complaint, Hughes challenges the standing of all three defendants to foreclose on the 2006 deed of trust, alleging none of them were identified as trustees or beneficiaries in the original note and deed of trust, and also the recorded instruments identifying them as successors in interest to the 2006 deed of trust are invalid.  Hughes seeks cancellation of the allegedly invalid various recorded instruments and a declaration defendants have no interest in the property senior to his own.  He also filed a lis pendens against the property.

Defendants demurred to Hughes' first amended complaint and after the trial court granted defendants' request to take judicial notice of the documents recorded in the property's chain of title, it sustained their demurrers without leave to amend.  On appeal, Hughes argues the court erred because:  (1) it failed to analyze the elements of the specific causes of action he pleaded; (2) it improperly assumed the truth of the information contained in the chain of title documents of which it took judicial notice; and (3) he alleged the existence of a dispute concerning the validity of defendants' claimed interests in the property, which could not be resolved on a demurrer.

2

We affirm. Although Hughes alleges several different causes of action, he acknowledges the gist of his lawsuit is his challenge to the authority of defendants to conduct a nonjudicial foreclosure in connection with the 2006 deed of trust. However, the trial court could properly take judicial notice of facts sufficient to demonstrate that the Bank had been assigned the beneficial interest in the deed of trust. Further, as explained in *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, (*Gomes*), a party cannot state a cause of action "to test whether the person initiating the [nonjudicial] foreclosure has the authority to do so." (*Id.* at p. 1155.) That is exactly what Hughes has attempted here. He is not entitled to a trial to ascertain the propriety of defendants' claimed right to foreclose on the property, merely because he questions it.

FACTS

Hughes' first amended complaint was filed on January 27, 2014. It alleges he took title to the subject property – a residential property in Coto de Caza – on January 15, 2014, and that he assumed title subject to any valid senior lien existing against the property on that date. Exhibit A to the first amended complaint reflects Hughes purchased his interest in the property at a trustee's sale conducted in connection with a notice of delinquent assessment lien recorded on behalf of "CZ Master Association" in August 2008. He paid less than $10,000.

Hughes alleges that defendants the Bank, Specialized Loan Servicing, and The Mortgage Law Firm claim to be, respectively: (1) the beneficiary of a loan obligation secured by a deed of trust recorded against the property in 2006; (2) the servicer of that loan obligation; and (3) the trustee on the deed of trust. Hughes disputes each of those claims.

3

Hughes alleges defendants recorded a "Notice of Default and Election to Sell Under Deed of Trust," as part of their effort to conduct a nonjudicial foreclosure of the property. However, Hughes alleges the notice is inaccurate in that (1) it "claims or implies" defendants are authorized to foreclose on the deed of trust, when they are not; (2) the named trustee under the deed of trust is actually "Apex Escrow," and The Mortgage Law Firm was never properly substituted in as trustee; and (3) the named beneficiary of the underlying senior loan obligation is actually "America's Wholesale Lender, a New York Corporation," and not the Bank.

On January 7, 2014, The Mortgage Law Firm recorded a "Notice of Trustee's Sale," in which it claimed to be acting as trustee under the senior deed of trust. It also claimed or implied the Bank was the beneficiary of the underlying loan obligation. However, Hughes asserts those claims were false because none of the defendants has any legal interest in the property, or any right to initiate foreclosure proceedings with respect to it.

Hughes alleges that as a result of defendants' unauthorized and illegal effort to foreclose on the deed of trust, he "stands to lose title to the home" and has been forced to incur expenses to protect his interest in the property.

Hughes' first amended complaint acknowledges the following instruments are recorded in connection with the property: (1) A deed of trust, recorded May 12, 2006, reflecting a transfer from "America's Wholesale Lender, a New York Corporation," to Countrywide Home Loans, Incorporated; (2) an "Assignment of Deed of Trust," recorded April 25, 2011, executed by a representative of "Mortgage Electronic Registration Systems, Inc." (MERS) and reflecting an assignment of the deed of trust to the Bank; (3) a substitution of trustee, recorded May 22, 2012, signed by a representative of Specialty Loan Servicing, on behalf of the Bank; (4) a notice of default, recorded May 22, 2012 and executed by a representative of The Mortgage Law Firm, as trustee; and (5)

4

a notice of trustee's sale, recorded January 7, 2014, executed by a representative of The Mortgage Law Firm.

Hughes alleges, however, that each of the foregoing recorded instruments is invalid and void, "because [his] claim to title is senior to all [those] claims." He seeks "cancellation" of each of the instruments because the instruments, "if not cancelled will cause injury to [him] because the items are being used by the defendants to substantiate a nonjudicial foreclosure of [his] property and are being used to cloud title."

Hughes also alleges none of the defendants qualifies as a "'trustee, mortgagee, or beneficiary, or any of their authorized agents'" that would be authorized to initiate a nonjudicial foreclosure of the property in accordance with Civil Code section 2924. Specifically, he alleges no defendant qualified as the holder of a beneficial interest under any mortgage or deed of trust that was secured by the property, no defendant was the original or a legally substituted trustee on the deed of trust, and no defendant was the designated agent of the holder of a beneficial interest in the original loan claimed to be secured by the property.

Hughes' complaint stated causes of action for (1) violations of Civil Code sections 2923.5, 2924 and 2924.17 (imposing procedural obligations on foreclosing parties); (2) slander and disparagement of title (based on defendants' alleged unauthorized filing of a notice of sale on his property); (3) request to cancel instrument(s) under Civil Code section 3412; (4) declaratory relief; (5) quiet title; and (6) unfair business practices. However, Hughes expressly abandoned his first cause of action in the trial court, and does not argue the merits of that claim on appeal. Consequently, we will not address it.

In March 2014, the Bank and SLS demurred to the first amended complaint and filed a motion to expunge the lis pendens. They argued the 2006 deed of trust they were foreclosing on was senior to the homeowners' association lien Hughes purchased, Hughes had at least constructive notice of the senior deed of trust and of the fact that

5

performance under the deed of trust was delinquent when he purchased his interest. They also argued, based on *Gomes*, that Hughes could not state any cause of action based on a challenge to the standing of parties to carry out a nonjudicial foreclosure. And they argued Hughes lacked standing to assert a cause of action based on alleged imperfections in either (1) the manner in which interests in the senior deed of trust were transferred to successor beneficiaries, or (2) the process of foreclosing on the senior deed of trust, as he was not a party to that deed of trust and his own interest in the property were not prejudiced by any flaw in the process by which it was foreclosed.

In support of their demurrer and motion to quash, the Bank and SLS filed a request for the court to take judicial notice of the documents recorded in the chain of title for the property. Among those documents was the 2006 deed of trust, recorded as instrument number 2006000322362. It reflects that although America's Wholesale Lender was the original lender, MERS "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," was the "beneficiary" of the deed of trust. It also specifies that MERS, in its capacity as lender's nominee, "has the right to exercise any or all of [the interests granted by the borrower], including, but not limited to, the right to foreclose and sell the Property."

A subsequent recorded instrument reflects that on April 13, 2011, America's Wholesale Lender assigned its deed of trust (specifically identified as instrument number 2006000322362) to the Bank, and an instrument recorded on April 25, 2011, reflects that MERS assigned its beneficial interest in the 2006 deed of trust (again, identified as instrument number 2006000322362) to the Bank. An instrument recorded on May 22, 2012, reflects that Specialty Loan Servicer, acting as loan servicer for the Bank, substituted The Mortgage Law Firm as the new trustee on the deed of trust. On May 22, 2012, the Mortgage Law Firm recorded a notice of default and intent to sell in connection with the deed of trust. That instrument reflected that as of May 18, 2012, the amount required to bring the underlying loan into good standing was $253,399.28.

6

The request for judicial notice also included documents reflecting the foreclosure of the 2006 deed of trust proceeded even after Hughes filed his first amended complaint. The December 2013 notice of trustee's sale was followed by a trustee's deed upon sale, recorded on February 13, 2014. That deed reflects that defendant The Mortgage Law Firm acted as duly appointed or substituted trustee under the 2006 deed of trust, sold the property to DAS Property Holdings LLC.

In his opposition to the demurrer, Hughes conceded the 2006 deed of trust was recorded prior to his purchase of the property. However, he claimed "the effect of that recording, what the document represented, if it was enforceable and by whom, and whether it was or was not in fact 'senior' or enforceable as to [his] perfected title" were all disputed issues in the case. He explained that he disputed the validity of defendants' foreclosure of the 2006 deed of trust because "strangers to the title document conducted it." As support for the existence of these disputes, Hughes cited the facts that (1) none of the defendants was named as either a beneficiary or trustee under the 2006 deed of trust, (2) the deed of trust contained restrictions on the manner in which the trustee could be substituted, (3) the purported assignment of the deed of trust to the Bank, reflected in the recorded documents, was invalid because it was not coupled with any assignment of the debt, and (4) the subsequent deed of sale on the property, purporting to transfer the interest secured by 2006 the deed of trust, reflected that "[t]he Grantee herein *was not* the foreclosing beneficiary."

Hughes also objected to the request for judicial notice, arguing that while the court could take judicial notice of the existence of the recorded documents, it could not assume the truth of any statements made within them. He asserted that when a request for judicial notice is filed in connection with a demurrer, it does not authorize the court to conduct a contested evidentiary hearing in the guise of taking judicial notice. Somewhat inconsistently, however, Hughes also filed a declaration, explaining the circumstances surrounding his purchase of the property, in support of his opposition.

7

At the hearing, the court summarized Hughes' claim: "He's proposed that there is some flaw in the title held by the demurring party, but he hasn't told us why." Hughes disputed that characterization, claiming he had pleaded specific facts demonstrating a valid dispute over defendants' claim to any ownership interest in the 2006 deed of trust. He explained that the primary cause of action stated in his complaint was for quiet title, and believed it had been adequately alleged based on his challenge to defendants' "claim to title or their claim to have sold a lien or title." He characterized his other causes of action as "essentially derivative and related" to that claim.

The court sustained the demurrer without leave to amend. It explained that the request for judicial notice demonstrated the lien created by the 2006 deed of trust had priority over the homeowners' association lien purchased by Hughes, and he had no legal basis for challenging defendants' foreclosure of that acknowledged senior lien. The court then granted defendants' motion to expunge the lis pendens, and ordered Hughes to pay the expenses incurred by the Bank and SLS in bringing the motion.

In April 2014, The Mortgage Law Firm also demurred to the complaint, making similar arguments. The court again sustained the demurrer without leave to amend.

DISCUSSION

*1. Standard of Review*

"A general demurrer is a trial of a pure issue of law and 'presents the same question to the appellate court as to the trial court, namely, whether the plaintiff has alleged sufficient facts to justify any relief, notwithstanding superfluous allegations or claims for unjustified relief. [Citations.] "[T]he allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452.)"' [Citation.] Pleading defects which do not affect substantial rights of

8

the parties should be disregarded." (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1371.)

"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." (*Blank v. Kirwin* (1985) 39 Cal.3d 311, 318.) "What is necessary to state a cause of action are the facts warranting legal relief, and not whether a plaintiff has provided apt, inapt, or no labels or titles for causes of action." (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc., supra,*171 Cal.App.4th at p. 1371.)

"A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

*2. Judicial Notice*

Hughes' primary complaint on appeal is that the trial court erred by taking judicial notice of not only the fact that certain documents were recorded in the property's chain of title, but also of the factual information reflected in those documents, and their legal effect. He argues that "while the court may take notice of the fact that certain items are recorded, the court cannot take notice of disputed statements that are contained within the disputed documents, and cannot take notice of the documents in whole, nor can the court make any determination as to the legal effect of the disputed recordings on demurrer."

Hughes is partially correct. Evidence Code section 452 governs permissive judicial notice, and subdivision (h) of that statute allows a court to take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable

9

accuracy." However, the mere fact that a document is recorded does not necessarily mean everything stated within it is accurate. Thus, "the fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. [Citation.] For example, [a recorded document] recites that [a party] 'is the present holder of beneficial interest under said Deed of Trust.' By taking judicial notice of the [document], the court does not take judicial notice of this fact, because it is hearsay and it cannot be considered not reasonably subject to dispute." (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117.) On the other hand, the ability to take judicial notice of the recorded documents means the court can also take judicial notice of aspects of the documents which are not subject to reasonable dispute, such as "the parties, dates, and legal consequences of a series of recorded documents." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265.)

Thus, "a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Fontenot v. Wells Fargo Bank, N.A., supra*, 198 Cal.App.4th at p. 265.)

In this case, Hughes raises no genuine dispute as to the authenticity of the recorded documents relied upon by defendants. We note he did argue in opposition to the demurrer that the copies of the documents attached to the request for judicial notice were not "authenticat[ed by] a witness with firsthand knowledge," and he repeats that assertion on appeal. But as defendants' pointed out in their reply, he effectively conceded the documents they relied upon were accurate representations of what had been recorded in the chain of title. Indeed, Hughes himself alleged the existence of these recorded

10

documents in the property's chain of title, and part of the relief he sought was the cancellation of the documents on the basis they were legally invalid. And on appeal, he concedes the existence of the recorded documents relied upon by defendants, when he asserts "[t]he defendants missed the entire point of the law suit wherein [he] was directly disputing *the validity of all of the defendants' recordings*." (Italics added.) Thus, we have no trouble concluding that, for purposes of the demurrers, Hughes has raised no genuine dispute as to either existence or the content of these recorded documents.

In any event, defendants offered to bring certified copies of the recorded documents to the hearing and make them available for inspection. In the absence of evidence to the contrary, we presume the trial court was able to satisfy itself that the documents were accurate representations of what was recorded.

Because Hughes raised no genuine dispute as to the accuracy of the recorded documents relied upon by defendants, we conclude the trial court could rely on them to determine dates each document was recorded and executed, the parties to the transaction reflected in each recorded document, and the document's legally operative language. Thus, the court could properly ascertain: (1) the 2006 deed of trust identified "America's Wholesale Lender" as the "lender," but also designated MERS both as the "nominee" of the lender and its successors and assigns, and as the "beneficiary" of the deed of trust; (2) the 2006 deed of trust was recorded before the homeowners' association lien from which Hughes obtained his title, and thus the lien it created was entitled to priority (Civ. Code, § 2897); (3) the "Assignment of Deed of Trust," recorded April 25, 2011 was entered into between MERS, as assignor, and the Bank, and the document's legally operative language reflected a grant and assignment of "all beneficial interest" under the 2006 deed of trust "together with the note(s) and obligations therein described" to the Bank; (4) Hughes was on notice of both the existence of the senior lien created by the 2006 deed of trust and the fact the underlying loan obligation was in default, at the

11

time he purchased the homeowners' association lien; and (5) the foreclosure sale scheduled by defendants was in connection with that same 2006 deed of trust.

Based on the parties and legally operative language of the May 2011 Assignment of Deed of Trust, the court could also take judicial notice that the legal effect of that assignment instrument was to make the Bank the beneficiary of the 2006 deed of trust. (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752, 754 [court properly took notice of a legal effect of an agreement "which provides that the FDIC transferred to JPMorgan assets of WaMu, but not certain liabilities, as of September 25, 2008, after Scott had obtained his loan and before JPMorgan foreclosed"].)

We note Hughes purports to dispute "MERS has any interest in the underlying loan or Deed of Trust and disputes the claim that MERS is a 'nominee' for the true beneficial interest holder of the underlying loan." He also "disputes that MERS has any authority whatsoever to convey anything to anyone." (Italics omitted.) But Hughes' conclusory assertion of a "dispute" is not sufficient to demonstrate any reasonable dispute actually exists as to the content of the 2006 deed of trust, which explicitly designates MERS as both the lender's nominee and the beneficiary. Thus, the court could properly take judicial notice of that content. (Evid. Code, § 452, subd. (h); *Scott v. JPMorgan Chase Bank, N.A., supra*, 214 Cal.App.4th at p. 754 ["whether the fact derives from the legal effect of a document or from a statement within the document, the fact may be judicially noticed where, as here, the fact is not reasonably subject to dispute"].)

And to the extent Hughes is asserting a *legal challenge* to MERS' role in the 2006 deed of trust or its ability to assign the beneficial interest therein to the Bank, similar attempts have already been rejected by our courts. As explained in *Gomes v. Countrywide Home Loans, Inc., supra*, 192 Cal.App.4th at p. 1151, "'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the

12

MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.'" And as noted in *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1498, "[t]he courts in California have universally held that MERS, as nominee beneficiary, *has the power to assign its interest under a DOT*." (Italics added.) Consequently, the trial court could properly take judicial notice of the legal effect of the recorded document reflecting MERS' assignment of its interest in the 2006 deed of trust to the Bank.

Hughes' assertion the trial court made factual findings that went beyond what could properly be extracted from the documents attached to defendants' request for judicial notice is not supported by the record. Significantly, Hughes does not identify any order granting the request for judicial notice, in whole or in part, and we find none in the record. Instead, he merely points to the court's oral statement that defendants retained the right to foreclose on the 2006 deed of trust even after he purchased his interest in the property because "they had a prior position, as demonstrated by the request for judicial notice." Hughes impliedly suggests this finding demonstrates the court granted defendants' request in its entirety and erroneously assumed the truth of all statements contained in the attached documents. However, that specific finding made by the court was appropriate, based on the judicially noticeable facts that (1) the 2006 deed had recording priority over the homeowner's association lien that Hughes purchased, and (2) MERS, the original beneficiary of the 2006 deed of trust, assigned all beneficial interest therein to the Bank. We will not presume, simply because the trial court made that

13

finding, that it also made additional, potentially inappropriate, findings based on the request for judicial notice.

We find no error in the trial court's treatment of defendants' request for judicial notice.

*3.  The Demurrers Were Properly Sustained*

Although Hughes complains on appeal that the trial court erred by failing to articulate an element-by-element analysis of each cause of action stated in his first amended complaint, he also acknowledges that the central assertion underlying each cause of action is that defendants are all complete "strangers" to the 2006 deed of trust, and thus lack authority to conduct a nonjudicial foreclosure in connection with it.  He then alleges that any evidence – including recorded documents in the property's chain of title – suggesting that any defendant succeeded to an interest in the 2006 deed of trust is disputed.  Given that evidentiary dispute, Hughes contends he is entitled, as a matter of law, to a trial on the merits of his claims.

But as we have already explained, the trial court could properly take judicial notice of certain facts derived from the information contained in defendants' request for judicial notice, including that the beneficiary's interest in the 2006 deed of trust was assigned to the defendant Bank in 2011.

Further, Hughes' conclusory challenge to the *validity* of the recorded documents changes nothing.  Civil Code section 1227 allows a challenge to the validity of an instrument "affecting an estate in real property" on the specific basis that the instrument *was the product of fraud*:  "Every instrument, other than a will, affecting an estate in real property, including every charge upon real property, or upon its rents or profits, made with intent to defraud prior or subsequent purchasers thereof, or encumbrancers thereon, is void as against every purchaser or encumbrancer, for value, of the same property, or the rents or profits thereof."  This statute, specifically governing the

14

voidability of instruments affecting real property, governs over Civil Code section 3412, the more general statute authorizing the cancellation of written instruments which is cited in Hughes' complaint as the basis for seeking cancellation of defendants' recorded documents. "'[I]t is well established that a specific provision prevails over a general one relating to the same subject.'" (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 942.)

Moreover, Civil Code section 1228 states, "No instrument is to be avoided under [Civil Code section 1227], in favor of a subsequent purchaser or encumbrancer having notice thereof at the time his purchase was made, or his lien acquired, unless the person in whose favor the instrument was made was privy to the fraud intended."

Hence, the statutory scheme applicable to instruments affecting ownership of real property allows a subsequent purchaser to challenge the validity of an earlier recorded instrument solely on the basis it was made *with intent to defraud*, and only if the beneficiary of the challenged instrument was privy to that fraud. And under the rules of pleading, fraud must be pleaded with specificity. "'In California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] "Thus '"the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect."' [Citation.] This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'"'" (*Small v. Fritz Companies, Inc*. (2003) 30 Cal.4th 167, 184.)

In this case, Hughes has made no effort to allege facts, specifically or otherwise, to demonstrate that the Bank, as beneficiary of the recorded assignment of the 2006 deed of trust, was privy to any fraud in the making of that instrument. Thus, his conclusory assertion that the recorded instrument is invalid is insufficient to support any cause of action seeking its cancellation. Similarly, the only fact cited in support of Hughes' challenge to the validity of the "Substitution of Trustee" recorded in May 2012

15

(reflecting that defendant SLS, acting as servicer for the Bank, has substituted defendant The Mortgage Law Firm as trustee of the 2006 deed of trust) is that the instrument was not signed by the original "lender" on the deed of trust. However, the substitution was executed a full year after the 2006 deed of trust was assigned to the Bank, and while we have no judicially noticeable documents establishing SLS actually was the authorized servicer for the Bank at the time it executed that substitution of trustee instrument, Hughes has alleged no facts suggesting the instrument is the product of intentional fraud.

In any event, as beneficiary of the 2006 deed of trust, the Bank was legally entitled to authorize an agent to conduct a foreclosure of the deed of trust on its behalf (Civil Code section 2924, subdivision (a).) Moreover, there is no statutory requirement that the agent carrying out the foreclosure "demonstrate authorization by its principal." (*Fontenot v. Wells Fargo Bank, N.A., supra*, 198 Cal.App.4th at p. 268.)

Because the judicially noticeable information presented to the trial court in support of the demurrers conclusively disproved what Hughes himself characterized as the central premise underlying each cause of action alleged in his first amended complaint – that defendants were "strangers" to the 2006 deed of trust – the trial court was not required to conduct an individual assessment of the elements of each cause of action before sustaining defendants' demurrers. "A demurrer may be sustained where judicially noticeable facts render the pleading defective [citation], and allegations in the pleading may be disregarded if they are contrary to facts judicially noticed." (*Intengen v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.)

Additionally, we reject Hughes assertion defendants' demurrers "exclusively relied upon recorded documents that the Bank Defendants brought for judicial notice, and offered no other arguments to defeat [his] complaint above and beyond mere citations to the recorded documents." In fact, defendants offered significant additional legal arguments in support of their demurrers. In particular, defendants relied

16

on *Gomes* for the proposition that Hughes could not state any cause of action based on the alleged lack of standing of defendants to carry out a nonjudicial foreclosure.

In *Gomes*, the court rejected the assertion that a cause of action could be stated "to test whether the person initiating the foreclosure has the authority to do so." (*Gomes, supra*, 192 Cal.App.4th at p. 1155.)  As the court explained, "Section 2924, subdivision (a)(1) states that a 'trustee, mortgagee, or beneficiary, or any of their authorized agents' may initiate the foreclosure process.  However, nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action. [Citation.]  Significantly, '[n]onjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, "[n]either appraisal nor judicial determination of fair value is required," and the debtor has no postsale right of redemption.' [Citation.]  The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Ibid.*)

The *Gomes* court found it significant that "Gomes has not asserted *any* factual basis to suspect that MERS lacks authority to proceed with the foreclosure.  He simply seeks the right to bring a lawsuit to find out *whether* MERS has such authority.  No case law or statute authorizes such a speculative suit." (*Gomes, supra,* 192 Cal.App.4th at p. 1156.)  This case is similar.  The only "facts" Hughes alleges are that (1) defendants are not named on the original loan documents creating the senior lien; and (2) he disputes the validity of subsequent recorded documents reflecting the assignment of the beneficial interest in the 2006 deed of trust to the Bank, and the substitution of defendant The Mortgage Law Firm as the trustee.  As we have already explained, however, those purported disputes are sufficiently resolved by the judicially noticeable

17

information defendants presented to the court.  The Bank is the successor beneficiary of the 2006 deed of trust, and it can legally designate any agent it chooses to conduct the foreclosure of that deed of trust.

Hughes acknowledges *Gomes* in his opening brief and attempts to distinguish it on the additional basis that the plaintiff in *Gomes* was a "defaulting borrower," rather than a person like Hughes, who "holds a valid and undisputed claim to title."  But Hughes does not explain how his status as a person claiming title to the property through his purchase of a junior lien would give him any enhanced right to challenge the standing of the party foreclosing on a senior lien, and we cannot conceive of why it would.  *Gomes*, which has been followed in numerous other cases (see, e.g., *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511-513; *Intengen v. BAC Home Loans Servicing LP, supra,* 214 Cal.App.4th at p. 1054; *Herrera v. Federal National Mortgage Assn., supra,* 205 Cal.App.4th at pp. 1503-1505; *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46; *Fontenot v. Wells Fargo Bank, N.A., supra,* 198 Cal.App.4th at pp. 268-273.)  We follow it here as well.

Finally, defendants also argued their demurrers must be sustained on the additional basis that Hughes lacked standing to assert a cause of action based on alleged imperfections in the manner in which interests in the senior deed of trust were transferred to successor beneficiaries.  As they point out, Hughes was not a party to the 2006 deed of trust and his own interest in the property – which was obtained through foreclosure of a junior lien – would not be prejudiced by any flaw in the process by which that senior interest is transferred.  We agree.  In *Jenkins v. JPMorgan Chase Bank, N.A., supra*, 216 Cal.App.4th at p. 514, the court rejected the plaintiff's effort to state a cause of action for declaratory relief "grounded on her assertion Defendants do not have a secured interest in her home to foreclose upon because of alleged noncompliance with the terms of the investment trust's pooling and servicing agreement."  The court explained that "[a]s an

18

unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." (*Id*. at p. 515.) Moreover, "even if any subsequent transfers of the promissory note were invalid, Jenkins *is not the victim of such invalid transfers because her obligations under the note remained unchanged*. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note. It is also possible to imagine one or many invalid transfers of the promissory note may cause a string of civil lawsuits between transferors and transferees. Jenkins, however, may not assume the theoretical claims of hypothetical transferors and transferees for the purposes of showing a 'controversy of concrete actuality.'" (*Ibid.,* italics added; see *Fontenot v. Wells Fargo ank, N.A., supra,* 198 Cal.App.4th at p. 272 ["Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment . . . . Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note"].)

The same is true here. Hughes was never a party to the 2006 deed of trust, nor to the note which it secured. And when Hughes bought the homeowners' association lien on the property, he did so with notice of the instruments recorded in the property's chain of title – including the existence of the 2006 deed of trust, and the notice of delinquency filed in connection with it. Any change in the identity of the person or entity exercising the rights created by that 2006 deed of trust had no prejudicial effect on the junior interest Hughes purchased. For that reason as well, Hughes cannot state a cause of action based on alleged flaws in the manner of transferring interests in the 2006 deed of trust to defendants.

19

*4. Leave to Amend*

"If the court sustained the demurrer without leave to amend . . . , we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Hughes argues he should have been given leave to amend for two reasons. His arguments, however, are conclusory and do not demonstrate any abuse of the trial court's discretion. He first asserts he could have amended to add allegations stating he "was denied his right to reinstate or otherwise satisfy the purported obligation over the property." (Italics omitted.) Such proffered allegations seem to rest on the notion that Hughes somehow succeeded to the legal rights of the original borrower in connection with the 2006 deed of trust when he obtained title to the property through foreclosure of the homeowners' association lien. But Hughes does not explain how his purchase of a junior lien in the property would have the effect of substituting him into the position of "borrower" under the 2006 note and deed of trust, and we cannot see how it would have.

Hughes also asserts he should have been allowed to "add additional causes of action because by the time the demurrer hearing took place, a 'change in circumstances'" had occurred. But he fails to specify what those changed circumstances were or to demonstrate why they would give rise to any viable cause of action. Further, Hughes' alleged ability to state "additional" causes of action based on changed circumstances does not suggest any ability to cure the defects in the causes of action already stated.

Based on the foregoing, Hughes has failed to demonstrate the trial court abused its discretion by sustaining the demurrers without leave to amend.

20

*5. The Order Expunging the Lis Pendens*

Based upon the trial court's orders sustaining defendants' demurrers to Hughes' first amended complaint without leave to amend, its order granting the motion to expunge the lis pendens was correct as a matter of law.

DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

FYBEL, J.

21